# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN ORTENZIO FOLINO,        )
                Petitioner,      )
                                   )

vs.                           )      Civil Action No. 11-1582
                                   )      Chief Magistrate Judge Maureen P. Kelly

MICHAEL HARLOW (Superintendent,   )
State Correctional Institution at Albion, PA);)
THE ATTORNEY GENERAL OF THE    )
STATE OF PENNSYLVANIA; THE      )
ALLEGHENY COUNTY (PA.) DISTRICT )
ATTORNEY'S OFFICE,            )
                    Respondents.  )

## MEMORANDUM OPINION

John Ortenzio Folino ("Petitioner") has filed this Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (the "Petition"), seeking to attack his state court conviction for first degree murder for which he was sentenced to life in prison without the possibility of parole.   At trial, Petitioner confessed to shooting the victim but claimed that he was so intoxicated that he could not form the intent necessary to satisfy the *mens rea* element of first degree murder.   Petitioner now raises eight claims, five of which are exhausted and three of which are not exhausted but procedurally defaulted.  As to the five exhausted claims, Petitioner fails to carry his burden to show that the State Courts' adjudication of his claims constituted decisions that were contrary to or an unreasonable application of United States Supreme Court precedent.  As to the three unexhausted claims, we find that even under de novo review, the claims fail to merit relief.   In addition, a certificate of appealability is denied because jurists of reason would not find the denial of habeas relief herein debatable.

## A. PROCEDURAL HISTORY

Petitioner, represented by local attorney, Patrick J. Thomassey, proceeded to a jury trial. Petitioner took the stand in his own defense and testified to his version of the events the night of the shooting. The jury convicted Petitioner of all counts and he was sentenced to life in prison for the first degree murder charge. Petitioner, through Attorney Thomassey filed a direct appeal to the Superior Court.[1] No Petition for Allowance of Appeal was filed with the Pennsylvania Supreme Court.

On September 12, 2005, Petitioner file a pro-se motion under the Post Conviction Relief Act. ECF No. 26-20 at 4 to 8. Attorney Scott Rudolph of the Allegheny County Office of the Public Defender was appointed to represent Petitioner. Attorney Rudolph filed an amended PCRA petition ('the First PCRA Petition") wherein the sole issue raised was that trial/appellate counsel was ineffective for advising Petitioner that a Petition for Allowance of Appeal was not appropriate in Petitioner's case. The First PCRA Petition resulted in the PCRA trial court reinstating Petitioner's right *nunc pro tunc* under state law to file a Petition for Allowance of Appeal with the Pennsylvania Supreme Court.

A counseled Petition for Allowance of Appeal was filed by Attorney Rudolph in the Pennsylvania Supreme Court, which denied it on August 9, 2006. Attorney Rudolph thereafter

---

[1] In the direct appeal brief, the following issues were raised:

      A. DID THE TRIAL COURT ERR IN DENYING THE DEFENDANT'S MOTION IN LIMINE TO PRECLUDE INTRODUCTION OF EVIDENCE OF OTHER WRONGS, CRIMES OR ACTS UNDER RULE 404(b) (2) OF THE PENNSYLVANIA RULES OF EVIDENCE?

      B. DID THE TRIAL COURT ERR IN FINDING THE EVIDENCE SUFFICIENT TO SUSTAIN A FINDING OF GUILTY ON THE CHARGE OF FIRST DEGREE MURDER?

ECF No. 10-2 at 24.

filed a Petition for Writ of Certiorari in the United States Supreme Court, which was denied on January 22, 2007.

On July 31, 2007, Petitioner filed a pro se a second PCRA Petition.  Attorney Rudolph was again appointed to represent Petitioner.  Attorney Rudolph filed an Amended PCRA Petition (the "Second PCRA Petition").  ECF No. 12-1 at 2 – 49 to 12-2 at 1 – 36.  The PCRA trial Judge (who also presided over Petitioner's trial) denied the Second PCRA Petition.  ECF No. 12-4 at 18 to 26.

Attorney Rudolph then filed an appeal to the Pennsylvania Superior Court,  ECF No.  13-1 at 1 to 40 – ECF No. 13-2 at 1 to 35.  The  Pennsylvania Superior Court affirmed.  ECF No. 13-5 at 29 - 45.

Attorney Rudolph then filed a Petition for Allowance of Appeal in the Pennsylvania Supreme Court, ECF No.  14-1 at 1 to ECF No. 14-2 at 27.   The Pennsylvania Supreme Court denied the Petition for Allowance of Appeal on November 13, 2011.

Petitioner then filed a pro se Petition for Writ of Habeas Corpus in this Court, in which he raised five grounds for relief.  ECF No. 4.  The Respondents filed an Answer, denying that Petitioner was entitled to relief.  ECF No. 10.  Respondents supplemented the Answer with copies of state court records.  ECF Nos. 11 – 14.  Petitioner filed a Traverse or Reply Brief.  ECF No. 21.

Petitioner also filed a Motion for Leave to File An Amended Habeas Petition ("Motion to Amend") in order to add three claims of ineffectiveness of trial counsel, which had not been raised in the state court proceedings but which Petitioner contended were permitted to be raised due to the alleged ineffectiveness of PCRA counsel for failing to raise those three claims of trial counsel's alleged ineffectiveness.  ECF No.  20.  The Court ordered Respondents to file a

Response to the Petitioner's Motion to Amend and Respondents filed their Response, indicating that they did not oppose amendment of the Petition. ECF No. 22.

The Court then granted Petitioner's Motion to Amend, ECF No. 23 and Petitioner filed an Amended Petition. ECF No. 24. The Respondents filed an Amended Answer, ECF No. 25. Petitioner then filed a Reply Brief. ECF No. 26.

All parties have consented to the plenary exercise of jurisdiction by the Magistrate Judge. ECF Nos. 7, 9.

## B. FACTUAL HISTORY

The Superior Court recounted the facts of this case as follows:

Appellant [i.e., Petitioner] and his wife, Cherie Folino, were married in 1998 and separated in 2001. Cherie and their children stayed with her brother, the victim, in this case, Robert Pesano. Appellant and Cherie disputed the ownership of "a computer given to Cherie's daughter by her grandmother. Appellant had become dependent on the computer for the bookkeeping of his construction business, and denie[d] ever having agreed to Cherie's taking possession of the computer."

In the early morning hours of February 3, 2002, Appellant, who had drunk alcohol at two bars, arrived home and "found his house vandalized and the computer missing." Appellant suspected that Cherie was responsible and drove to Robert's house "to confront her. On his way there, however, [A]ppellant claim[ed] he was running low on gas and . . . stop[ped] at his mother's house and [took] her car instead. Appellant was at all times aware that he was in possession of a fully loaded nine-millimeter pistol."

At approximately 2:15 a.m. [A]ppellant arrived at the victim's home. Refusing to open the door, Robert spoke to [A]ppellant through a glass panel in the door. He informed [A]ppellant that Cherie was asleep and suggested that he go home. Appellant refused and fired six rounds into the door striking Robert in the torso and limbs and killing him. Appellant then fled the scene in his mother's car. After driving around for fifty-three minutes, [A]ppellant called 911 from a gas station, informed the operator of his action and turned himself over to the police.

A three-day jury trial began on December 17, 2002, at which Appellant's defense was that he was so intoxicated he could not be found guilty of first-degree murder. A jury returned verdicts on first-degree murder, discharging a firearm into an occupied structure, carrying a firearm without a license, and two counts of

recklessly endangering another person.  On February 20, 2003, Appellant was
sentenced to life imprisonment and a consecutive term of 5 ½ to 11 years'
incarceration.

ECF No. 13-5 at  29 – 31 (citations and footnotes omitted).

## C.  APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I,

§101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments

in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996.  Because

Petitioner's Petition was filed after its effective date, the AEDPA is applicable to this case.

Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of

the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA

provides the applicable deferential standards by which the federal habeas court is to review the

state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court has

expounded upon the standard found in 28 U.S.C. § 2254(d).  In Williams, the Supreme Court

explained that Congress intended that habeas relief for errors of law may only be granted in two

situations: 1) where the state court decision was "contrary to . . . clearly established Federal law

as determined by the Supreme Court of the United States" or 2) where that state court decision

"involved an unreasonable application of[] clearly established Federal law as determined by the

Supreme Court of the United States."  Id. at 404-05 (emphasis deleted).  The Supreme Court

explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case differently than this Court has
> on a set of materially indistinguishable facts.  Under the "unreasonable

application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 412-13. The United States Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)). Moreover, it is Petitioner's burden to prove the state court decision is either contrary to or an unreasonable application of clearly established federal law. See Matteo, 171 F.3d at 888; Werts v. Vaughn, 228 F.3d at 197.

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d)(2).

## D. DISCUSSION

The first three grounds for relief that Petitioner raises, which were exhausted in the state courts, are all claims of ineffective assistance of trial counsel as follows:

> **GROUND ONE:** [Petitioner claims that his trial counsel was ineffective due to his] "failure to present available evidence corroborating Petitioner's testimony that Decedent Pesano was a man of a violent and unpredictable nature."

ECF No. 24 at 5.

> **GROUND TWO:** [Trial counsel was ineffective due to his] "failure to object to judgeless /unrecorded jury selection hearing going forward absent Petitioner's intelligent and knowing consent."

Id. at 7.

> **GROUND THREE:** [Trial counsel was ineffective due to his] "failure to assert Due Process basis to exclude unduly prejudicial prior crimes evidence –

> inflammatory testimony of ex-wife regarding prior assaults by Petitioner upon her and inflammatory photos[.]"

Id. at 8.

In addressing these three claims of trial counsel's alleged ineffectiveness, the state courts applied the state court test for ineffective assistance of counsel ultimately derived from Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987). See ECF No. 13-5 at 32. This Pierce standard has been found to be materially identical to the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Werts, 228 F.3d at 203. The United States Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" Strickland, and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland." Id. at 204.

Because the state courts decided Petitioner's claims of ineffective assistance of counsel under the standards of Pierce and those standards are essentially the same as the Strickland standard, this Court is required to apply the deferential standard of 28 U.S.C. § 2254(d), which demands that a habeas petitioner demonstrate that the state court's adjudication of the federal claim resulted in a decision that was contrary to Supreme Court precedents or an unreasonable application of federal law. Pursuant to the holding of Werts, Petitioner is barred from arguing that the decisions of the state courts, applying the Pierce standard, are contrary to the standard announced in Strickland. Petitioner could argue the second sense of "contrary to," i.e., the state courts reached a different result from that of the United States Supreme Court on a set of materially indistinguishable facts.

However, Petitioner has not argued and does not point to any United States Supreme Court decision, in existence at the time that the state courts rendered their decisions in this case, that have a set of facts that are materially indistinguishable from Petitioner's case where the outcome was different from the outcome reached by the state courts herein. Williams, 529 U.S. at 412 (analyzing whether a state court decision is "contrary to" Supreme Court precedent requires analysis of the "holdings as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision."). Indeed, even assuming that Strickland had a set of facts that are materially indistinguishable from the facts of Petitioner's case, the outcome of Strickland and the outcome in Petitioner's PCRA appeal in the Superior Court were the same, i.e., the criminal defendant was denied relief in both cases. Accordingly, Petitioner has not shown that the Pennsylvania Superior Court's PCRA decision in this case was contrary to clearly established federal law as determined by the United States Supreme Court.

Thus it remains open to Petitioner to show that the decisions of the state courts were an unreasonable application of federal law. However, Petitioner fails to show that the state courts' disposition of his claims was an unreasonable application of United States Supreme Court precedent. In Strickland v. Washington, the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the defendant must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). In reviewing counsel's actions, the court presumes that counsel was effective. Strickland, 466 U.S. at 689. There is no one correct way to represent a client and counsel must have latitude to make tactical decisions. Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990)("[W]hether or not some other strategy would

have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained.").   In light of the foregoing, the Court of Appeals for the Third Circuit has explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." <u>United States v. Kauffman</u>, 109 F.3d 186, 190 (3d Cir. 1997)(<u>quoting</u> <u>United States v. Gray</u>, 878 F.2d 702, 711 (3d Cir.1989)).

Second, under <u>Strickland</u>, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694; <u>see</u> <u>also</u> <u>Williams</u>, 529 U.S. at 391.

Moreover, because the Superior Court addressed Petitioner's exhausted claims of ineffectiveness on the merits, this Court must apply the deferential standards of the AEDPA, which results in a doubly deferential standard as explained by the United States Supreme Court:

> "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S.Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles*, 556 U.S., at ——, 129 S.Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —— [129 S.Ct., at 1420].  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."

Premo v. Moore, 562 U.S. 115, __, 131 S.Ct. 733, 740 (2011) (quoting Harrington v. Richter, 131 S.Ct. 770, 788 (2011)).  Accord Grant v. Lockett, 709 F.3d 224, 232 (3d Cir. 2013) ("'A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself.' *Id.* Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.' *Pinholster*, 131 S.Ct. at 1403. Federal habeas courts must 'take a highly deferential look at counsel's performance' under *Strickland*, 'through the deferential lens of § 2254(d).'").

**1.  Ground One Does Not Afford Petitioner Relief.**

Petitioner alleged that his trial counsel was ineffective for not presenting available evidence, corroborating Petitioner's testimony that the victim was a violent man.   The Superior Court's disposition of Petitioner's ineffectiveness claim was essentially a conclusion that trial counsel had a reasonable basis for not presenting such evidence, namely, that Petitioner's defense presented at trial was not one of self-defense but rather a defense that Petitioner was so intoxicated that Petitioner could not form the requisite intent to satisfy a conviction for first degree murder.

The Superior Court reasoned as follows:

We first review the PCRA court's findings:

> [Appellant's] [i.e., Petitioner's] second claim regarding counsel's ineffectiveness alleges that trial counsel failed to present available evidence corroborating his contention that the victim was known by him to be a violent and unpredictable person.  This type of evidence would have been appropriate if [Appellant] had presented the defense of self defense; however, he did not do so. The defense in this case was based upon [Appellant's] claim that he was too intoxicated to form the specific intent to kill. Moreover, [Appellant] did not testify that he had the gun with him on the date of the incident because he was afraid of the victim; rather, he stated that he had the gun with him because a former employee to whom he owed money had threatened to harm him.

As such, there was no basis for trial counsel to have offered this type of evidence.

PCRA Ct. Op. at 4.  Appellant concedes in his brief:

> Appellant's defense during his trial was that although he had indeed killed Robert Pesano, he had not acted with the *mens rea* required for the crime of First Degree Murder.  In support of this claim, he presented expert testimony on the subject of extreme intoxication and its effect on the higher order mental functioning encompassed in the intent to kill.

Appellant's Brief at 33.

> We agree with the PCRA Court's rationale, and find Appellant has not shown counsel lacked a reasonable basis for not presenting this evidence. Instead, counsel's advancement of an intoxication defense would preclude a theory of self-defense; accordingly, counsel had a reasonable basis for not presenting evidence to explain that Appellant brought a gun with him for self-protection.

ECF No. 13-5 at 38.

The Superior Court's disposition of this claim is eminently reasonable.  Petitioner has not carried his burden to show otherwise.  Petitioner does argue that "Petitioner from day one, and at trial, claimed self-defense."  ECF No. 26 at 3.  To the extent that Petitioner is arguing that the State Courts' finding that Petitioner did not present a self-defense theory to the jury is am unreasonable factual determination, Petitioner fails to show that the factual determination by the State Courts was indeed unreasonable.   The concession observed by the Superior Court in Petitioner's brief to that Court as to what defense was presented supports the fact that Petitioner did not present a self-defense theory to the jury.  The most that the Petitioner can assert here is that there was evidence in the record to support a self-defense theory.  But notwithstanding the presence of such evidence, in fact, the actual defense asserted at trial and the evidence adduced by the expert presented by the defense at trial was a defense of Petitioner being so intoxicated that he could not form the specific intent to commit First Degree Murder.  Accordingly Petitioner

fails to show that the State Court's finding that Petitioner pursued an intoxication defense and not a theory of self-defense constituted an unreasonable determination of the facts. The most that Petitioner could establish is that the record is ambiguous with respect to whether Petitioner in fact presented a self-defense theory to the jury, as opposed to, there merely being some evidence contained in the testimony in support of such a theory. However, establishing that the record is ambiguous with respect to Petitioner presenting a self-defense theory to the jury is simply insufficient for Petitioner to show that the State Courts' finding, that Petitioner pursued an intoxication defense, constituted an unreasonable determination of the facts. Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993) ("On collateral attack, a silent record supports the judgment; the state receives the benefit of a presumption of regularity and all reasonable inferences. . . . His [i.e., habeas Petitioner's] entire position depends on persuading us that all gaps and ambiguities in the record count against the state. Judgments are presumed valid, however, and Parke emphasizes that one who seeks collateral relief bears a heavy burden."); Robinson v. Smith, 451 F.Supp. 1278, 1284 n.6 (W.D.N.Y. 1978) ("In my own independent review of the record, I have resolved ambiguities against petitioner"); Patrick v. Johnson, No. CIV.A. 3:98-CV-2291, 2000 WL 1400684, at *9 (N.D. Tex. Aug. 23, 2000) ("whatever ambiguity exists in the record must be resolved in favor of the trial court's finding.").

Petitioner also seems to argue against the Superior Court's conclusion that "counsel's advancement of an intoxication defense would preclude a theory of self-defense." ECF No. 13-5 at 38. See ECF No. 26 at 8 (Petitioner asserted that "[t]he Commonwealth here contends that a self-defense claim and a claim of intoxication can not be used at the same time."). However, it is the province of the State Courts to determine what state law is and we find that the Superior Court's determination of the state law issue of what defenses are compatible or not is purely an

issue of state law that is not a claim that is cognizable in federal habeas proceedings, even assuming that that state courts erred on a matter of state law. Wainwright v. Goode, 464 U.S. 78, 84 (1983) (stating that federal courts are bound by a State Court's interpretation of state law); Lyda v. Gibson,172 F.3d 879 (Table), 1999 WL 107116, at *1 (10th Cir. 1999); Bagby v. Sowders, 894 F.2d 792, 795 (6th Cir. 1990) ("Inasmuch as the highest court of Kentucky expressly held that the state trial court did not err in refusing to give the requested lesser included offense instruction, the refusal was necessarily correct as a matter of state law. It would be an extremely rare case in which a federal court could conclude that a state court committed an error under state law. Indeed, if the case has been reviewed by the state's highest court it would be **impossible** to find an error of state law if that court did not.") (quoting Pilon v. Bordenkircher, 593 F.2d 264, 267 n.4 (6th Cir. 1079), *vacated on other grounds*, 444 U.S. 1 (1979))(emphasis added). See also McCormick v. Kline, 572 F.3d 841 (10th Cir. 2009).[2]

Accordingly, for the foregoing reasons, Ground One does not afford Petitioner relief.

---

[2] Petitioner's reliance on Commonwealth v. Drew, 459 A.2d 318 (1983) is misplaced. ECF No. 26 at 8. Although the Court in Drew did indicate that evidence of intoxication might be relevant to the defense of self-defense, the Court found that "appellant relied on the defense of self defense, thus the reasonableness of her belief of imminent danger was an issue before the jury. The question of the consumption of alcoholic beverages within this time frame would be relevant to the question of whether appellant did in fact have a reasonable belief of an immediate threat to her life." Id. at 322. However, unlike Drew, Petitioner herein, as found by the State Courts, did not pursue a self-defense theory but rather a theory of intoxication to such a degree that he could not form the intent required to qualify for First Degree Murder. Hence, Drew is distinguishable from this case on its facts. Petitioner has not shown that the defendant in Drew involved a charge of First Degree Murder for which intoxication could have lessened the level of culpability or that she raised such an intoxication defense. The defendant in Drew apparently did not raise the claim that she was so intoxicated that she could not form the specific intent to kill, which was Petitioner's defense herein, but rather asserted that her intoxicated state rendered her belief in the existence of imminent danger reasonable so as to justify her use of deadly force.

**2. Ground Two Does not Afford Petitioner Relief.**

In Ground Two, Petitioner complained that his trial counsel was ineffective due to his "failure to object to judgeless/unrecorded jury selection hearing going forward absent Petitioner's intelligent and knowing consent[.]" ECF No. 24 at 7.

The Superior Court addressed this claim as follows:

> The PCRA court first noted that Appellant "executed a document waiving the presence of" a judge and court reporter at his jury selection proceedings. It reasoned:
>
>> [Appellant] has not shown, nor even argued, that he was prejudiced by the lack of the foregoing. It is customary in this county to not have a judge or a court reporter present during the jury selection in non-capital cases. However, if a request is made for the presence of either a judge or a court reporter, that request is routinely granted, pursuant to Pa.R.Crim.P. 613 A, which states that a judge is required to be present unless waived by both the Commonwealth and the defense. Thus, if [Appellant] had refused to execute the waiver and had requested the presence of a judge and a court reporter, the Court would have granted his request[.] Accordingly, the Court finds no violation of the jury selection process in these claims.
>
> We agree.

ECF No. 13-5 at 34 – 35 (citations omitted).

The foregoing analysis by the Superior Court is a conclusion that Petitioner failed to prove prejudice from his trial counsel's alleged failure to assure that Petitioner's waiver of a right to have a judge present at jury selection was knowing and intelligent.

The Superior Court went on to also find that Petitioner failed to show that his underlying claim that the Petitioner's waiver must be affirmatively shown to have been knowing and intelligent lacked merit. ECF No. 13-5 at 36 ("we find that Appellant has not shown his underlying argument has merit.").

Petitioner fails to carry his burden to show that the foregoing analysis by the Pennsylvania Superior Court was an unreasonable application of Strickland. Indeed, we find it to have been eminently reasonable under the doubly deferential standard applicable to such ineffectiveness claims because Petitioner did in fact fail to show prejudice. Petitioner also failed to show the underlying claim that, in effect, there must affirmatively appear evidence on the record (in addition to his signed waiver form) that showed his waiver to have been knowing and intelligent was meritorious. See, e.g., Haith v. United States, 342 F.2d 158, 158 (3d Cir. 1965) (where no prejudice was shown by the criminal defendant the court concluded that "We are entirely satisfied that under the facts there was no reversible error in the absence of the trial judge during the voir dire and selection of the jury and that there was no reversible error in the failure of the stenographer to record the voir dire and jury selection.");[3] Bailey v. Stewart, Civ.A. No. 11-1020, 2014 WL 899370, at *13 (W.D.Pa. March 7, 2014) ("Notably, the Pennsylvania Superior Court has held that, where a defendant, in consultation with counsel, waives his right to have a judge present during voir dire, neither the statute nor any case law requires that the

---

[3] But see U.S. v. Mortimer, 161 F. 240, 241 - 42 (3d Cir. 1998) stating that Gomez v. U.S., 490 U.S. 858 (1989) rendered the decision in Haith "obsolete" and suggesting that the absence of a judge during voir dire, without defendant's consent constituted a structural error which did not require a showing of prejudice. Even if the absence of a judge during voir dire without a defendant's consent (a factual situation the State Courts implicitly determined was not present in Petitioner's case given his written waiver) constitutes a structural error, Petitioner would still have the burden to prove prejudice here in order to succeed on his Sixth Amendment claim of ineffectiveness. Torres v. Thaler, 395 F.App'x101, 103 (5th Cir. 2010)("We refused to 'hold that a structural error [i.e., one where prejudice is presumed] alone is sufficient to warrant a presumption of prejudice in the ineffective assistance of counsel context'"); Purvis v. Crosby, 451 F.3d 734, 743 (11th Cir. 2006) ("prejudice may not be presumed but must be shown in order to establish ineffective assistance of counsel based on the failure to raise a claim of structural error at trial. For the same reasons that prejudice cannot be presumed in order to satisfy the prejudice requirement when an objection to structural error was not made at trial, it cannot be presumed to satisfy the prejudice component of an ineffective assistance claim arising from the same failure to preserve the structural error."); Ward v. Hinsley, 377 F.3d 719, 726 (7th Cir. 2004).

defendant's waiver be knowing, voluntary, and intelligent or confirmed by an on-the-record oral colloquy. Not only has Petitioner failed to demonstrate prejudice, he has also failed to demonstrate that Pennsylvania law in this regard is in violation of the United States Constitution so as to entitle him to habeas relief.") (citations omitted); <u>Fitzgerald v. Klopotoski</u> Civ.A. No. 09-1379, 2010 WL 3629682, at *10 (W.D.Pa. Sept. 9, 2010) ("It is notable that the Pennsylvania Superior Court has held that, where a defendant, in consultation with counsel, waives his right to have a judge present during voir dire, neither the statute nor any case law requires that the defendant's waiver be knowing, voluntary, and intelligent or confirmed by an on-the-record oral colloquy. Petitioner has failed to demonstrate that Pennsylvania law in this regard is in violation of the United States Constitution such as to entitle him to habeas corpus relief.")(citations omitted).

Accordingly, Ground Two does not afford Petitioner relief.

**3. Ground Three Does not Afford Petitioner Relief.**

In Ground Three, Petitioner asserts that his trial counsel was ineffective for failing to object on constitutional grounds to the admission of evidence concerning his abuse of his ex-wife and of photographs of her after Petitioner abused her. It should be noted that Petitioner's trial counsel did file a motion in limine objecting to the admission of this evidence on state law evidentiary grounds, arguing that the prejudicial value outweighed the probative value. However, such motion and objection were overruled.

The Superior Court rejected this claim, essentially finding that Petitioner's underlying claims of a due process violation in admission of the evidence were "the same claims that were advanced, albeit under the rules of evidence, on direct appeal. Because a review of Appellant's instant claim would be based on the same principles as those discussed on direct appeal, we find

that . . . no relief is due." ECF No. 13-5 at 43. The Superior Court in effect found that Petitioner's trial counsel was not ineffective for failing to raise a due process objection in addition to the state evidentiary objection because a determination that the probative value outweighed the prejudicial value of the contested evidence essentially precluded a successful claim that Petitioner's trial was rendered fundamentally unfair due to the admission of such evidence.[4] Hence, counsel could not be deemed ineffective for failing to raise a meritless objection.

Petitioner fails to establish that this was an unreasonable application of Strickland. Nor do we find it to be such. See, e.g., Werts v. Vaughn, 228 F.3d at 203 ("counsel cannot be ineffective for failing to raise a meritless claim."): Wood v. Dretke, NO. 3:01-CV-2103, 2004 WL 1243169 at *32 (N.D.Tex. Jun 4, 2004) ("with regard to Petitioner's assertion that his trial counsel were ineffective for failing to object to the admission of the testimony on the basis that its admission violated his due process rights, trial counsel did object to the admission of Judith Kelly's testimony on the basis that the evidence did not establish either identity and on the basis that its prejudicial effect substantially outweighed its probative value. Trial counsel was not

---

[4] The Pennsylvania Superior Court is not unique in this mode of analysis of finding that the due process analysis is encompassed within a state law evidentiary prejudice-versus-probative-value analysis. See, e.g., Lesko v. Owens, 881 F.2d 44, 50 (3d Cir. 1989) ("The legal theory (the probative value of evidence was outweighed by its prejudicial effect) and the facts (the substance of Rutherford's testimony) on which Lesko's federal claim rests, had been submitted to the state courts. Thus, the issue decided by the Pennsylvania Supreme Court was the substantial equivalent of Lesko's fourteenth amendment claim"); Marshall v. Rudick, 570 F. App'x 823, 827 (10th Cir. 2014) ("Habeas relief is available to 'disturb a state court's admission of evidence of prior crimes, wrongs or acts' only if 'the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies defendant due process of law.' . . . We conclude that the prejudicial effect of the other-crimes evidence did not so greatly outweigh its probative value as to deny Mr. Marshall 'the fundamental fairness that is the essence of due process.'). In other words, a determination that any particular evidence has greater probative value than prejudicial effect is, in effect, a determination that the fundamental fairness guaranteed by the due process clause of the United States Constitution is not offended by the admission of such evidence.

required to lodge a further objection based upon the federal constitution, given that the objections he did make were judged to be without merit.") (citations omitted).

Accordingly Ground Three does not afford Petitioner relief.

**4. Ground Four Does not Afford Petitioner Relief.**

In Ground Four, Petitioner asserts that he was constructively denied counsel in his direct appeal to the Superior Court given that his direct appeal counsel who was also his trial counsel filed "a perfunctory and boilerplate 15-page brief in a two-issue homicide appeal." ECF No. 24 at 10. This issue was not addressed by the State Courts in any explicit way because it was only argued in the Nunc Pro Tunc Petition for Allowance of Appeal, which was denied in a one sentence order by the Pennsylvania Supreme Court. However, we do not find that Petitioner carried his burden to show that he was in fact constructively denied appellate counsel.

In order to establish constructive denial of counsel, appellate counsel must have done less than appellate counsel did here, which was to raise two good issues on appeal, namely, first, that the evidence was insufficient to convict Petitioner of first degree murder and second, that the trial court erred in admitting the evidence of Petitioner's past abuse of his ex-wife. We note that Petitioner raises both of these claims herein. In Ground Five below, Petitioner attacks the sufficiency of the evidence. In Ground Three above, Petitioner implicitly asserts that the evidence was improperly introduced. These issues were not so devoid of merit that Petitioner can establish that he was constructively denied counsel in his direct appeal. See, e.g., Sims v. U.S., 103 F.3d 133 (Table), 1996 WL 681333, at *3 (7th Cir. 1996) ("Our court and others have resisted presuming prejudice, however, where errors of appellate counsel did not amount to constructive absence of counsel. *See, e.g., Enoch v. Gramley*, 70 F.3d 1490, 1503 (7th Cir. 1995) (no per se prejudice in the 'typical' situation 'where the attorney failed to bring obvious claims to

the attention of the appellate court but argued others'), *cert. denied*, 117 S.Ct. 95 (1996); ... *Sharp v. Puckett*, 930 F.2d 450, 452-53 (5ᵗʰ Cir. 1991) (no presumption of prejudice resulting from appellate counsel's failure to argue a colorable issue because counsel was present throughout appellate process, reviewed the record, and filed an appellate brief which argued a non-frivolous ground of error). . . .   The First Circuit, in fact, has drawn a distinction between those few cases of nonperformance in which prejudice may be presumed and cases of inept performance in which actual prejudice must be demonstrated. *Scarpa v. Dubois*, 38 F.3d 1, 13-14 (1st Cir.1994) ('[A]ttorney error, even when egregious, will almost always require analysis under Strickland 's prejudice prong.')."

Accordingly, because Petitioner was not constructively denied appellate counsel, Petitioner's Fourth Ground does not afford him relief.

**5.  Ground Five Does not Afford Petitioner Relief.**

In the Fifth Ground, Petitioner alleges that there was insufficient evidence of intent due to the "prosecutor's failure to prove beyond a reasonable doubt that Petitioner acted with premeditation and the specific intent to kill."  ECF No. 24 at 12.

The Superior Court addressed this issue in its Opinion on direct appeal.  ECF No. 10-3 at 44 – 46.  The Superior Court analyzed the sufficiency of the evidence utilizing the state law test of sufficiency as follows:  "[w]hen we evaluate a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt."  ECF No. 10-3 at 44.  See Jackson v. Virginia, 443  U.S. 302 (1979) (setting forth the federal test for insufficiency).

As the United States Court of Appeals for the Third Circuit has declared: "the test for insufficiency of the evidence is the same under both Pennsylvania and federal law." Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992). Hence, Petitioner cannot show that the Superior Court's disposition was contrary to United States Supreme Court precedent in the first sense, i.e., applying a wrong rule of law. Nor does Petitioner carry his burden to show that the Superior Court's disposition of the insufficiency of the evidence claim was contrary to the United States Supreme Court precedent in the second sense, i.e., reaching a conclusion different from the conclusion reached by the United States Supreme Court in a case which has a set of materially indistinguishable facts.

Nor has Petitioner established that the Superior Court's disposition of the insufficiency of the evidence claim constituted an unreasonable application of United States Supreme Court precedent. The Superior Court utilized state law, which permits the factfinder to infer intent to kill from the use of deadly force on a human being and the state courts found that there was sufficient evidence, including Petitioner's own testimony that he shot the victim, to find that Petitioner utilized deadly force on the victim and thus, permitted the inference that Petitioner intended to kill the victim in satisfaction of that element of first degree murder, which, under state law requires the specific intent to kill. Commonwealth v. Meredith, 416 A.2d 481, 485 (Pa. 1980) ("A well-recognized and generally accepted inference to establish state of mind is that an actor intends the natural and probable consequences of his acts. An offshoot of this principle is that a specific intent to kill may be inferred from the use of a deadly force upon a vital part of the human body.").

While Petitioner argued that he was so intoxicated that he could not form the requisite intent for a first degree murder conviction and that the Commonwealth failed to adduce evidence to the contrary, the Superior Court rejected this claim as follows:

> The Commonwealth, on the other hand, points to appellant's actions as not consistent with those of a person who is overwhelmed to the point of losing his faculties. First, appellant drove without incident, not only between the multiple bars he visited that night, but also on the ride to and from Robert's [i.e., the victim's] house. Second, appellant was cognizant enough to notice that his truck was low on gas, stop at his mother's house, switch cars, and continue driving to Robert's house. Third, he was able to accurately recount the killing to a 911 operator and turn himself over to the authorities. In light of this evidence, the fact finder could conclude that appellant was not so impaired as to be unable to form intent. We find no merit to appellant's argument.

ECF No. 10-3 at 45 – 46.

Petitioner fails to show that this disposition was an unreasonable application of United States Supreme Court precedent or an unreasonable determination of the facts. Accordingly, Ground Five fails to merit habeas relief.

### 6. The Three Procedurally Defaulted Claims of Ineffectiveness

Petitioner concedes that the next three grounds of trial counsel's ineffectiveness are unexhausted and are procedurally defaulted. However, he argues that he has "cause" to excuse the procedural default of these three claims of trial counsel's ineffectiveness based upon the alleged ineffectiveness of his PCRA counsel pursuant to the holding in Martinez v. Ryan, 132 S.Ct. 1309 (2012). In Martinez, the United States Supreme Court held, as an equitable matter, and not as a constitutional matter, that the ineffective assistance of post-conviction relief counsel at the initial hearing level (what we will refer to herein as the "PCRA trial level") could provide "cause" so as to excuse the procedural default of a claim of trial counsel's ineffectiveness, where the post-conviction proceedings were the first opportunity under state law to raise claims of ineffective assistance of trial counsel. Id. at 1313-21.

The three procedurally defaulted claims of trial counsel ineffectiveness are as follows:

GROUND SIX:  Trial counsel was ineffective for his "unreasonable advice to Petitioner about the right not to testify.  And, unreasonable advice of telling Petitioner not to testify about pertinent facts.

ECF No. 24 at 14.

GROUND SEVEN:  Trial counsel was ineffective due to his "failure to object to added charge [of shooting a firearm into an occupied structure] which Petitioner was never informed that he was on trial for.

Id. at 16.

GROUND EIGHT: Trial counsel was ineffective for his "failure to investigate and raise Petitioner's claim of Detective tampering with interview report."

Id. at 18.

We assume that Petitioner is alleging that his PCRA counsel in the second PCRA Petition proceedings was ineffective because in the first PCRA Petition proceedings, his PCRA counsel was successful in having Petitioner's right to file a Petition for Allowance of Appeal re-instated. PCRA counsel in the second PCRA proceedings filed an 83 page Amended PCRA Petition.   The Amended PCRA Petition raised the following thirteen issues:

Ineffective Trial Counsel:  Failure to Object to Unsupervised Jury Selection.

Ineffective Trial Counsel: Failure to Present Evidence of Decedent's Violent Past.

Ineffective Trial Counsel: Failure to Assert Constitutional Objection to Evidence of Petitioner's Prior Assaults on His Wife.

Ineffective Trial Counsel:  Failure to Object to Cherri [sic] Folino Assault Photographs.

Ineffective Trial Counsel:  Failure to Assert Constitutional Objection to Introduction of Crime Scene Photographs.

Ineffective Trial Counsel: Failure to Object to Inadequate Final Instruction on First Degree Murder.

Ineffective Trial Counsel: Failure to Object to Inadequate Final Instruction on Voluntary Intoxication Defense.

Ineffective Trial Counsel: Failure to Object to Absence of Final Instruction on Crime of Involuntary Manslaughter.

Ineffective Trial Counsel: Failure to Object to Lack of Timely and Adequate Cautionary Instruction on Prior Crimes Evidence.

Constructive Denial of Appellate Counsel.

Ineffective Appellate Counsel: Inadequate Argument on Insufficient Evidence.

Ineffective Appellate Counsel: Inadequate argument re Prior Assault Evidence.

Ineffective Appellate Counsel: Failure to Assert Error in Denial of Involuntary Manslaughter Instruction.

ECF No. 12-1 at ¶¶ 13 – 25 (emphases deleted).

In view of the issues that Petitioner's PCRA Counsel did raise, it is difficult for Petitioner to show that his PCRA counsel was ineffective. As the Supreme Court has declared

appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. . . . [I]t is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See, e.g., Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome").

Smith v. Robbins, 528 U.S. 259, 288 (2000). Thus, "[i]f the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance." Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (internal quotation marks omitted). On the other hand, "if the

omitted issue has merit but is not so compelling, [we must assess] the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission;  of course, if the issue is meritless, its omission will not constitute deficient performance."  Id. (citing Smith, 528 U.S. at 288).

Here, Petitioner has not separately argued, yet alone convinced the court, as is his burden, that the three issues of trial counsel's alleged ineffectiveness not raised by PCRA counsel (allegedly due to PCRA counsel's ineffectiveness) were stronger than the 13 issues PCRA counsel actually raised.  Furthermore, Petitioner has failed to make a showing that, had PCRA counsel raised the three issues which Petitioner claims he should have, there was a reasonable likelihood that the result of the PCRA proceedings would have been different.  See Smith v. Robbins, 528 U.S. at 285-86 (a petitioner must show a reasonable probability that but for appellate counsel's unreasonable failure to raise issues, he would have prevailed on his appeal).

Thus, we find that Petitioner has failed to establish PCRA counsel's ineffectiveness and therefore, he has not established cause to overcome the procedural default of the three claims of trial counsel's ineffectiveness.

Nor do we find that Petitioner has established a miscarriage of justice, if this Court were to not excuse his procedural default and address the three procedurally defaulted claims of trial counsel's ineffectiveness on the merits.  Accordingly, Petitioner's procedural default of these three claims of trial counsel's alleged ineffectiveness should not be overlooked and these three claims cannot be addressed on the merits.

For the sake of completeness though for any reviewing court, we will briefly address the three procedurally defaulted claims of trial counsel's alleged ineffectiveness.

### a) Ground Six Does Not Afford Petitioner Relief

Petitioner's first procedurally defaulted claim is that his trial counsel was ineffective for advising Petitioner that he had to take the stand and for advising Petitioner to not testify about the victim's violent past.   In light of the fact that Petitioner did not deny shooting the victim, and Petitioner's defense that he was so intoxicated that he could not form the specific intent required for a First Degree Murder conviction, we cannot conclude that it was deficient performance for Petitioner's counsel to advise him that he should testify to get his version of the events before the jury.   As to trial counsel's advice not to testify about the victim's violent past, given Petitioner's defense of intoxication, it would not appear that the victim's violent past would have been relevant and therefore admissible.  We cannot conclude on this record that such advice was deficient.  Petitioner has simply failed to rebut the presumption that his trial counsel was effective.

### b) Ground Seven Does Not Afford Petitioner Relief

Petitioner's second procedurally defaulted claim is that his trial counsel was ineffective for failing to object to the added charge of discharging a firearm into an occupied structure. Petitioner claims that he was never advised of this charge before trial, and never arraigned or given a preliminary hearing on this charge.  ECF No. 24 at 16.  The Respondents pointed out that the original criminal information filed by the Commonwealth on March 11, 2002 charged, *inter alia*, the crime of discharging a firearm into an occupied structure.  ECF No. 25 at 32.  In the Traverse, Petitioner does not contest the facts asserted by the Commonwealth nor does he argue in support of Ground Seven, which is the only Ground he does not argue in support of in the Traverse.   Given that the charge of discharging a firearm into an occupied structure was included in the first Criminal Information filed by the Commonwealth, there would have been no

ground upon which Petitioner's trial counsel could have objected as there was no amending of the Criminal Information as Petitioner seemingly argues. Moreover, Petitioner fails to assert yet alone establish prejudice from counsel's failure, especially given that although Petitioner was convicted of the crime of discharging a weapon into an occupied structure, he was not given any sentence on that crime. ECF No. 25 at 3. Accordingly, Petitioner could not establish trial counsel's ineffectiveness as to this ground.

### c) Ground Eight Does Not Afford Petitioner Relief

Petitioner's third procedurally defaulted claim of trial counsel's ineffectiveness is based on a claim that Detective Carpico who interviewed Petitioner after the killing, altered the police report. Petitioner asserts that whereas Petitioner told Detective Carpico that when he went up to the porch of the victim's house, he was carrying the gun in his "pants" apparently meaning thereby in his pants' waistband. Detective Carpico wrote in the report that Petitioner carried the gun in his hand up to the porch. Petitioner asserts that there is evidence that the report was altered and further, Petitioner asserts that there was potential evidence of Detective Carpico being a "corrupt cop" because after Petitioner's trial Detective Carpico committed suicide in a stand-off with police. Petitioner asserts that whether he carried the gun in his hand or whether it was in his pants was relevant to whether the jury could find pre-meditation or not. If he carried the gun in his pants, the jury could conclude no pre-meditation whereas if he carried the gun in his hand, the jury could more easily conclude that Petitioner pre-meditated the shooting.

We note that Petitioner does not assert that the police report was introduced into evidence. We further note that Detective Carpico did take the stand and testify that Petitioner told him in the interview that Petitioner went up on the victim's porch carrying the gun in his hand. State Court Record, Notes of Testimony at Trial ("N.T.") , p. 212, lines 9 – 11 (Petitioner

"told me that he carried the weapon up to the porch in his right hand, not in his waistband or any kind of holster."); and p. 223 lines 19 -20 (Petitioner "stated that he carried it in his hand from the car to the porch."). In contrast, Petitioner testified that he "took the gun out of my pants, and I shot into the door." N.T. at p. 317, lines 7 – 9.

The Respondents provided a copy of the police report at issue and a review of the report does not support Petitioner's assertion that the word "hand" appears to be altered. ECF No. 25-1 at 10. In fact, the report indicates that "These Officers [i.e., Detectives Carpico and Ladley] asked FOLINO how he carried the weapon onto the porch and he replied that it was in his hand. FOLINO indicated that he did not wear a holster and did not have the gun in his waistband nor his pocket." Id. Accordingly, given that the report contained in this record does not appear altered, Petitioner cannot carry his burden to show that his counsel was even deficient in not pursuing this line of inquiry because it would appear to have been meritless.

However, even if we assumed that the report was altered, the jury had before it the competing versions of the facts. At most, the alleged evidence of tampering with the police report would have been relevant to impeaching the credibility of Detective Carpico's testimony that Petitioner carried the gun in his hand rather than in his pants. We cannot say in light of the entire record of this case that Petitioner has carried his burden to show prejudice, i.e. that there is a reasonable likelihood that the result of his trial would have been different had his trial counsel pursued this line of inquiry.

For the forgoing reasons, Petitioner's Petition for Writ of Habeas Corpus is denied.

**D. CERTIFICATE OF APPEALABILITY**

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2).

Applying this standard to the instant case, the Court concludes that Petitioner has not made any such showing and further we conclude that jurists of reason would not find the disposition of this Petition debatable.    Accordingly, a certificate of appealability is denied.

BY THE COURT:


_s/ Maureen P. Kelly_
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE


Date:    December 24, 2014

cc:    John Ortenzio Folino
FG-7172
SCI Albion
10745 Route 18
Albion, PA 16475

All Counsel of Record via CM-ECF